**FILED**

OCT 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Department of Justice <br> Antitrust Division <br> 1401 H Street, NW, Suite 4000 <br> Washington, DC 20530, <br><br>       Plaintiff, <br><br> v. <br><br> ABITIBI-CONSOLIDATED INC. <br> 1155 Metcalfe Street <br> Suite 800 <br> Montréal, QC H3B 5H2 <br> Canada <br><br> and <br><br> BOWATER INCORPORATED <br> 55 E. Camperdown Way <br> Greenville, SC 29601, <br><br>       Defendants. | CASE NO: <br><br> Case: 1:07-cv-01912 <br> Assigned To : Collyer, Rosemary M. <br> Assign. Date : 10/23/2007 <br> Description: Antitrust |

## COMPLAINT

The United States of America, acting under the direction of the Acting Attorney General of the United States, brings this civil action to enjoin the proposed merger of Defendants Abitibi-Consolidated Inc. ("Abitibi") and Bowater Incorporated ("Bowater"). The United States alleges as follows:

1

## I. **NATURE OF THE ACTION**

1.    On January 29, 2007, Abitibi and Bowater announced plans to merge into a new company to be called AbitibiBowater Inc. in a transaction valued at $1.6 billion.

2.    Abitibi and Bowater are the two largest newsprint producers in North America. The combination of these two firms will create a newsprint producer three times larger than the next largest North American newsprint producer. After the merger, the combined firm will have the incentive and ability to withdraw capacity and raise newsprint prices in the North American newsprint market.

3.    Unless the proposed transaction is enjoined, Defendants' merger will substantially lessen competition in the production and sale of newsprint, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. **JURISDICTION AND VENUE**

4.    The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

5.    Both Defendants produce and sell newsprint in the flow of interstate commerce. Defendants' production and sale of newsprint substantially affect interstate commerce. This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25 and 28 U.S.C. §§ 1331, 1337(a), and 1345.

6.    Defendants have consented to venue and personal jurisdiction in this judicial district.

### III. <u>DEFENDANTS TO THE PROPOSED TRANSACTION</u>

7.      Abitibi, the largest newsprint supplier in North America, is a Canadian corporation with its principal place of business in Montréal, Quebec, Canada. Abitibi produces and sells newsprint to customers around the world. Abitibi owns and operates, either solely or with other firms, eleven paper mills in the United States and Canada that currently produce newsprint, as well as one mill in the United Kingdom. In 2006, Abitibi's total sales were approximately $4.85 billion, including approximately $1.7 billion in aggregate North American newsprint sales.

8.      Bowater, the second-largest newsprint supplier in North America, is incorporated in Delaware with its principal place of business in Greenville, South Carolina. Bowater owns and operates, either solely or with other firms, eight paper mills in the United States and Canada that currently produce newsprint, as well as one mill in South Korea. In 2006, Bowater's total sales were approximately $3.53 billion, including approximately $1.1 billion in aggregate North American newsprint sales.

### IV. <u>TRADE AND COMMERCE</u>

#### A.      <u>The Relevant Market</u>

#### 1.      **Product Market: Newsprint**

9.      Newsprint is the lowest grade of uncoated groundwood paper (i.e., paper manufactured from mechanically processed pulp). In 2006, approximately 9.745 million metric tonnes of newsprint were sold in North America. Newspaper publishers purchase more than 80 percent of the available newsprint supply to print newspapers. Some newsprint also is used in

3

the production of direct mail and newspaper inserts.

10.      Newspaper publishers have no close substitutes for newsprint to use for printing newspapers. Newsprint is generally the least expensive paper grade. In addition, publishers' newspaper presses are optimized for newsprint and cannot be modified to use other paper grades without incurring significant costs.

11.      Newsprint used for other purposes constitutes only a small share of total sales. While a small but significant increase in the price of newsprint may cause some customers for these other uses to switch to other grades of groundwood paper or otherwise reduce their consumption of newsprint, those losses would not be sufficient to make such a price increase unprofitable.

12.      For these reasons, demand for newsprint is highly inelastic with respect to changes in price. Accordingly, the production and sale of newsprint is a distinct line of commerce and a relevant product market within the meaning of the Clayton Act.

### 2.      Geographic Market: North America

13.      The relevant geographic market for the sale of newsprint is no smaller than the United States and Canada ("North America"). Newsprint can be transported within the United States and Canada at a sufficiently low cost and in such a timely and reliable manner that an attempt to increase price anticompetitively in any smaller region of the United States or North America would prove unprofitable. In the event of such an attempted price increase, customers could readily and economically shift their purchases to newsprint producers throughout North America.

4

14.     The relevant geographic market is no broader than North America. Foreign imports account for approximately two percent of North American newsprint consumption. Transportation costs of importing newsprint are relatively high, and customers are concerned about the reliability of foreign newsprint supply. Consequently, a small but significant increase in the price of newsprint will not likely cause customers to purchase sufficient volumes of additional newsprint from outside of North America to make such a price increase unprofitable.

15.     Accordingly, North America is a relevant geographic market within the meaning of the Clayton Act.

**B.     Anticompetitive Effects**

16.     The proposed transaction likely will substantially reduce competition in the North American newsprint market. Abitibi and Bowater are the two largest producers of newsprint in North America and compete directly against one another to produce and sell newsprint. Abitibi and Bowater currently own approximately 25 percent and 16 percent of capacity, respectively, which will result in a post-merger share of over 40 percent.

17.     Demand for newsprint in the North American market has declined over the last several years at a rate of approximately 5 to 10 percent per year because of a significant decline in demand for newspapers. As a result, North American newsprint producers have closed, idled, or converted some of their newsprint capacity. This decline in the demand for newsprint is projected to continue, and the resulting excess newsprint capacity will likely lead Defendants and their competitors to close, idle, or convert more newsprint mills.

18.     But for the merger, following the anticipated demand-based reductions in

5

capacity, neither Abitibi nor Bowater acting alone would be of sufficient size to profitably increase the price of newsprint by reducing its own output through strategically closing, idling, or converting its capacity.

19.     The proposed transaction would combine Defendants' large share of newsprint capacity, thereby expanding the quantity of newsprint sales over which the merged firm would benefit from a price increase. This would provide the merged firm with an incentive to close capacity sooner than it otherwise would to raise prices and profit from the higher margins on its remaining capacity.

C.     **Neither Supply Responses Nor Entry Will Defeat an Exercise of Market Power**

20.     Neither the combined firm's North American competitors, nor producers from outside of the North American market, can, individually or collectively, increase their newsprint sales to North American customers to make a price increase by the merged firm unprofitable. Additionally, entry by a new competitor would not be timely, likely, or sufficient to defeat an exercise of market power by the merged firm. The merged firm will therefore have both the incentive and the ability to impose an anticompetitive price increase.

21.     While some North American newsprint competitors currently have some limited excess capacity, that capacity will be reduced by the closure or conversion of unprofitable newsprint mills or machines in response to falling demand for newsprint. Once this newsprint capacity exits the market, the merged firm then will be able profitably to exercise market power.

22.     North American newsprint competitors would not defeat an anticompetitive price increase by restarting their closed or idled newsprint capacity in response to such a price increase.

6

The increased revenue from restarting a machine or mill would not outweigh the start-up costs, particularly in a declining market.

23.     Producers currently manufacturing other coated and uncoated grades of paper are not likely to switch to producing newsprint in response to a price increase.  Declining demand for newsprint has caused several producers to invest substantial capital to convert machines that had previously been producing newsprint to machines that produce grades of paper that return higher margins.  These producers would not find it profitable to switch back to newsprint to defeat an exercise of market power by the merged firm.

24.     North American newsprint producers currently export some of their newsprint.  Some of these newsprint exports likely would be directed back to the North American market in response to a price increase.  However, this repatriation of newsprint will be insufficient, even in combination with other competitive responses, to discipline an exercise of market power by the combined firm.  Abitibi and Bowater collectively produce over 65 percent of the newsprint exported from North America and would have no incentive to repatriate such exports.  In addition, most of the remaining exports by North American producers are sold pursuant to long-term sales arrangements and relationships and therefore are unlikely to be repatriated in response to a price increase in North America.

25.     Successful entry into the manufacturing and distribution of newsprint is difficult, time consuming, and costly.  New entry requires investing hundreds of millions of dollars in equipment and facilities, extensive environmental permitting, and the establishment of a reliable distribution system and work force.  Particularly given that demand for newsprint is declining in

7

North America, a new entrant would not find it profitable to build a new newsprint mill in response to a price increase, and could not do so within two years.

26.    Accordingly, neither entry nor industry supply responses to a price increase for newsprint in North America will deter the likely exercise of market power by the combined firm.

## V. **VIOLATION ALLEGED**

27.    The likely effect of the proposed merger of Abitibi and Bowater may be substantially to lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. Section § 18.

28.    Unless restrained, the proposed transaction likely will have the following effects, among others:

> (a)    competition likely will be lessened substantially in the production and sale of newsprint in North America;
>
> (b)    actual and potential competition between Abitibi and Bowater in the production and sale of newsprint in North America will be eliminated; and
>
> (c)    prices charged for newsprint in North America likely will increase.

## VI. **REQUESTED RELIEF**

31.    The United States requests that:

(a)    the proposed transaction be adjudged and decreed to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)    Defendants and all persons acting on their behalf be permanently enjoined and restrained from consummating the proposed transaction or from entering into or carrying out any contract, agreement, understanding, or plan, the effect of which would be to combine the businesses or assets of Defendants;

(c)    Plaintiff be awarded its costs for this action; and

(d)    Plaintiff receive such other and further relief as the Court may deem just

and proper.

Respectfully submitted,

*Deborah A. Garza*

Deborah A. Garza (DC Bar No. 395259)

Acting Assistant Attorney General

Antitrust Division

*James J. O'Connell*

James J. O'Connell (DC Bar No. 464109)

Acting Deputy Assistant Attorney General

Antitrust Division

*J. Robert Kramer II*

J. Robert Kramer II

Director of Operations

Antitrust Division

*Joseph Miller*

Joseph Miller (DC Bar No. 439965)

Assistant Chief

Litigation I Section

Antitrust Division

*Karl D. Knutsen*

Karl D. Knutsen

Ryan Danks

Mitchell Glende

Seth A. Grossman

N. Christopher Hardee (DC Bar No. 458168)

David Kelly

Ihan Kim

Rebecca A. Perlmutter

Attorneys

U.S. Department of Justice

Antitrust Division

Litigation I Section

1401 H Street, NW, Suite 4000

Washington, DC 20530

(202) 514-0976

DATED: October 23, 2007

10

**I (a) PLAINTIFFS**

THE UNITED STATES OF AMERICA

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Karl D. Knutsen, Dept. of Justice   Rebecca Perlmutter, Dept. of Justice
1401 H Street NW, Suite 4000        1401 H Street NW, Suite 4000
NW, Washington DC 20530             Washington, DC 20530
(202) 514-0976                      (202) 307-6456

**DEFENDANTS**

ABITIBI-CONSOLIDATED INC. AND BOWATER INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Montreal, Quebec
(IN U.S. PLAINTIFF CASES)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

Case: 1:07-cv-01912
Assigned To : Collyer, Rosemary M.
Assign. Date : 10/23/2007
Description: Antitrust

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☒ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☒ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action to enjoin proposed merger under Section 7 of the Clayton Act, 15 USC § 18

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES ☒ NO   If yes, please complete related case form.

DATE 10/23/2007   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.