THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABITIBI-CONSOLIDATED INC. and BOWATER INC.,<br><br>Defendants. | CASE NO:   1:07-cv-1912<br><br>JUDGE: Collyer, Rosemary M.<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: |

### RESPONSE OF PLAINTIFF UNITED STATES TO THE NAA'S MOTION FOR LEAVE TO APPEAR AS AMICUS CURIAE

The United States opposes the Newspaper Association of America's (the "NAA") Motion For Leave To Appear As Amicus Curiae ("Motion") in this Tunney Act (the "Act") proceeding. Under the Act, the Court must determine whether entry of the proposed Final Judgment is in the public interest. As Congress anticipated, courts typically make this determination on the basis of the information, including public comments, that the Act requires the United States to file with the Court. In this case, the NAA submitted an extensive public comment, to which the United States has responded.[1] Any additional information that the NAA would submit, as far as can be determined from the NAA's Motion, would largely duplicate its comment.[2] The Court should therefore deny the NAA's Motion.

---

[1] Both the NAA's comment and the United States' response have been filed with the Court.

[2] The NAA notes that it may seek to intervene if the Court denies its request to appear as amicus, but it has not yet moved to intervene. The United States will appropriately respond to any intervention motion, should one be made.

## INTRODUCTION

1.  **The Tunney Act.** The Court must find that the proposed Final Judgment is in the public interest before entering the Final Judgment. 15 U.S.C. § 16(e). The Act, which governs the Court's public interest determination, sets forth a public comment process requiring that the United States (1) publish notices in newspapers and the *Federal Register*; (2) file and publish a Competitive Impact Statement ("CIS") describing, among other things, the antitrust violation and the proposed decree; and (3) file with the Court and publish in the *Federal Register* any public comments received and its response to those comments. *Id.* § 16(b)-(d). The public comment process gives the Court, as well as the United States, the benefit of views of interested nonparties prior to making its public interest determination.

The Act enumerates factors the Court is to consider in making its public interest determination. *Id.* § 16(e)(1). The Court may make its determination based on the information provided by the Complaint, proposed Final Judgment, CIS, public comments, and the government's response to comments. If the Court concludes that the information is insufficient and it needs more, the Act provides a wide array of tools for obtaining more. *Id.* § 16(f); *see also id.* § 16(e)(2). ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.").

2.  **Proceedings to date.** On October 23, 2007, the United States filed a Complaint alleging that the merger of Abitibi-Consolidated, Inc. ("Abitibi") and Bowater Incorporated ("Bowater") violated Section 7 of the Clayton Act, 15 U.S.C. § 18. At the same time, the United States filed a proposed Final Judgment, to which the defendants had consented, requiring the divestiture of the Abitibi paper mill in Snowflake, Arizona, to remedy the harms alleged in the

2

Complaint. *See* 15 U.S.C. § 16(b)-(h). Also on October 23, 2007, the United States filed its CIS, *see id.* § 16(b), analyzing the violation alleged in the Complaint and the remedies in the proposed Final Judgment for the competitive harms the proposed merger would create if consummated as Abitibi and Bowater had planned. The United States published the proposed Final Judgment and CIS in the *Federal Register* on November 8, 2007, *United States v. Abitibi-Consolidated Inc. and Bowater Inc.*, 72 Fed. Reg. 63,187 (November 8, 2007); 15 U.S.C. §16(b), and published summaries of the terms of the proposed Final Judgment and CIS, together with directions for the submission of written comments relating to the proposed Final Judgment, in *The Washington Post* for seven days beginning on November 18, 2007, and ending on November 24, 2007, *see id.* § 16©). The comment period expired on January 7, 2008.

During the comment period, the United States received only one comment. On January 2, 2008, the NAA submitted a 23-page comment accompanied by over 200 pages of supporting materials – including 183 pages of economic analysis of the Abitibi-Bowater transaction prepared by an economic consulting firm. The United States filed its response to the NAA's comment, along with the comment itself, on April 18, 2008.[3]

3. **The NAA's Motion.** Without considering the government's response to its comment, the NAA filed the instant Motion seeking leave to appear as amicus curiae, to introduce evidence, to file a brief, and to participate in a hearing or Special Master proceeding.

---

[3]In the meantime, defendants Abitibi and Bowater have completed their merger and become AbitibiBowater Inc. AbitibiBowater sold the Snowflake, Arizona paper mill to Catalyst Paper Corporation, a Canadian firm based in Vancouver, BC, on April 10, 2008..

## ARGUMENT

### The Court Should Deny the NAA's Motion

The NAA provides no sound reason for granting its Motion. This proceeding is not a trial on the merits. It is a statutory proceeding to determine whether it would be in the public interest for the Court to enter the proposed Final Judgment. 15 U.S.C. § 16(e). The Act requires the United States to provide the Court with substantial information relevant to the Court's determination, including the views and analyses of interested third parties. *Id.* §§ 16(b) & (d). This information is ordinarily sufficient to support a court's determination. However, the Act also permits the Court to employ an array of techniques for gathering additional information, *id.* § 16(f), when necessary to make its public interest determination. The Court could take advantage of these techniques as the NAA proposes. However, the NAA's Motion makes clear that what NAA seeks to provide to the Court would be entirely redundant, or nearly so, in light of the material already before the Court, much of which was provided originally by NAA itself. Accordingly, there is no sound reason to grant the NAA's Motion and the Court should reject its Motion.

1. **The Court Should Base Its Public Interest Determination On The Mandatory Tunney Act Materials Unless They Inadequately Inform The Court's Public Interest Determination**

This proceeding is not a trial on the merits. The parties to the underlying antitrust dispute have resolved their differences, and the Court therefore does not face the classic judicial task of "[r]esolving contested disputes" of fact, law, and remedy.[4] The Act requires that the government

---

[4] Maimon Schwarzschild, *Public Law by Private Bargain: Title VII Consent Decrees and the Fairness of Negotiated Institutional Reform*, 1984 Duke L.J. 887, 903 (1984). Rather, the Court's task is only to determine whether to perform the "judicial act," *United States v. Swift &*

4

provide the Court with substantial information relevant to its public interest determination, including the Complaint, the proposed decree, the CIS, any comments submitted to the government by interested third parties, and the government's response to those comments. 15 U.S.C. §§ 16(b) & (d). Congress contemplated that these materials would often suffice.[5] Congress reiterated its understanding in the 2004 Amendments to the Act by providing in 15 U.S.C. § 16(e)(2) that "Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene."

The Act provides a wide array of optional tools which the Court may employ to gather additional information, 15 U.S.C. § 16(f), but the Court should exercise its discretion to employ these tools only when it is necessary to do so. To do otherwise would conflict with the principle that "the trial judge will adduce the necessary information through the least . . . complicated and least time-consuming means possible," S. Rep. No. 93-298 at 6 (1973) (Senate Report).

---

Co., 286 U.S. 106, 115 (1932), of entering the decree proposed by the parties as the Court's decree. In carrying out that task, the Court must be mindful of the congressional purpose to preserve the role of the consent decree in effective antitrust enforcement, see S. Rep. No. 93-298 at 5 (1973) ("Senate Report") ("the consent decree is of crucial importance as an enforcement tool, since it permits the allocation of resources elsewhere"); 119 Cong. Rec. 24,600 (1973) (Statement of Sen. Gurney) (Tunney Act "is designed to enhance the value and effectiveness of the consent decree as a tool of public policy"), a purpose which would be threatened by transforming the Court's public interest determination into a process resembling a trial.

[5]Senate Report at 6 ("[w]here the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized"); see also *United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) ("Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); The Antitrust Procedures & Penalties Act: Hearings on S. 782 & S. 1088 Before the Subcomm. on Antitrust & Monopoly of the Senate Committee on the Judiciary, at 152-53, 93d Cong. (1973) (testimony of Hon. J. Skelly Wright) ("an experienced judge, who does have the facility of getting to the point and getting others to get to the point, can arrive at a public interest determination in most cases without using" additional tools).

Ordinarily, courts do not find it necessary to employ these additional tools in Act proceedings. Thus, for example, Judge Greene, considering the entry of a decree that would massively restructure the entire telecommunications industry, "concluded that none of the issues before [the Court] require[d] an evidentiary hearing. That being so, there [was] obviously no need, nor indeed any occasion, for the presentation by a third party of its own witnesses or for the cross-examination of adverse witnesses." *United States v. AT&T*, 552 F. Supp. 131, 219 (D.D.C. 1982), *aff'd mem. sub. nom. Maryland v. United States*, 460 U.S. 1001 (1983).

2.  **The NAA Fails To Show How Its Participation Would Be Helpful To The Court**

The United States believes that the record in this proceeding includes sufficient information to properly inform the Court's public interest determination. Thus, though it is it certainly at the Court's discretion, there is no need for the Court to obtain more information from the NAA. The NAA's Motion explains neither why the record before the Court now is insufficient nor how the NAA's proposed participation would cure any alleged insufficiency.

To be sure, the NAA asserts that "[u]nless the Court permits NAA to participate in the Act proceedings," a particular post-comment-period proposed price increase "may not otherwise come to the Court's attention." Motion at 6. But the Motion and its attachments, which are now part of the record of this proceeding, belie that assertion. The proposed price increase is described in a full paragraph in the Motion, discussed in a four page letter attached to the Motion, Exhibit B to Motion, Letter dated March 10, 2008, from Alan Marx to Karl Knutsen, and further discussed in lengthy press clippings attached to that letter. Current newsprint pricing is also discussed in the United State's response to NAA's comment. By now, the Court's attention has been amply drawn to that proposal.

The NAA Motion does not indicate what, beyond that now well-highlighted proposed price increase, the NAA's proposed participation would bring to this proceeding that cannot be found in the evidence and argument contained in the more than 200 pages of material which the NAA has submitted to the Court. As Judge Kollar-Kotelly said of a similar proposal in another Act proceeding by a commentor to offer expert testimony where the expert's comments were already part of a comment, the NAA's "request in this regard seems somewhat redundant in light of the lengthy comment it submitted to the Department of Justice in response to the proposed consent decree. . . . Because the Court is authorized to consider [the] comments submitted to the Department of Justice, 15 U.S.C. § 16(f)(4), and because the Court has already received and will review copies of [the] comments, . . . the Court considers any additional participation by [the commentor] to be largely superfluous." *United States v. Microsoft Corp.*, 2002 WL 319436, at *3 (D.D.C., Feb. 20, 2002).

3. **Denying The NAA's Motion Will Not Preclude The Court From Gathering Additional Information Should It Subsequently Determine It To Be Necessary**

The Court need not be concerned that denying the NAA's Motion would leave the Court without resources should it later conclude that the information in the record is insufficient to make the Court's public interest determination. In the unlikely event that the Court concludes that it needs additional information, the Act's provisions allowing the Court to gather further information remain in place. 15 U.S.C. § 16(f). The Act does not limit the Court's exercise of its sound discretion in this respect, *see AT&T*, 552 F. Supp. at 218 ("congressional reports and hearings . . . repeatedly emphasized that the court conducting a Tunney Act proceeding would have the widest possible latitude in choosing the appropriate method for collecting the

information necessary to make its decision and that the various means specified in the subsection were to be regarded as permissive"), except by the general principle that "the trial judge will adduce the necessary information through the least . . . complicated and least time-consuming means possible," Senate Report at 6. The Court will be able to obtain the information it considers necessary, and, we add, may do so without designating any supplier of that information as "amicus" or as "intervenor." *See* 15 U.S.C. § 16(f)(3) (authorized modes of participation include participation as amicus or intervenor, but also "any other manner and extent which serves the public interest as the court may deem appropriate").

## CONCLUSION

For the foregoing reasons, the Court should deny the NAA's Motion.

Respectfully Submitted,

Dated: April 21, 2008

Karl D. Knutsen
Ryan Danks
Rebecca Perlmutter
Michelle Seltzer (D.C. Bar No. 475482)
Trial Attorneys
Litigation I Section
Antitrust Division
United States Department of Justice
1401 H St., N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 514-0976
Facsimile: (202) 307-5802

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2008, I caused a copy of the foregoing Response of Plaintiff United States to the NAA's Motion for Leave To Appear as Amicus Curiae in this matter to the following individuals by electronic mail:

**Counsel for Defendant Abitibi-Consolidated Inc.**
Joseph J. Simons, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1615 L Street, NW
Suite 1300
Washington, DC 20036-5694
Telephone: (202) 223-7370
Facsimile: (202) 223-7470
Email: jsimons@paulweiss.com

**Counsel for Defendant Bowater Incorporated**
R. Hewitt Pate, Esq.
Hunton & Williams
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 955-1921
Facsimile: (202) 857-3894
Email: hpate@hunton.com

**Counsel for the Newspaper Association of America**
Alan L. Marx, Esq.
King and Ballow
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
Telephone: (615) 726-5455
Facsimile: (615) 726-5413
Email: amarx@kingballow.com

Karl D. Knutsen